UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARON McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 15-11915-JGD |
| CITY OF BOSTON and | ) | |
| RICHARD WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## MOTION TO DISMISS BY RICHARD WALKER

November 12, 2015

DEIN, U.S.M.J.

### I.  INTRODUCTION

This action arises out of the arrest of the plaintiff, Sharon McDonald, on June 19, 2012

on an arrest warrant obtained by the defendant, Richard Walker, a detective with the Boston

Police Department.  The arrest turned out to be a case of mistaken identity and the charges

against Ms. McDonald were eventually dismissed, but only after she had spent several days in

jail.  Ms. McDonald brought suit against the City of Boston and Det. Walker.  In response to an

unopposed motion to dismiss filed by the City, several counts against the City have been

dismissed.  (See Docket No. 34).  This Memorandum of Decision and Order will address the

Motion to Dismiss filed by Det. Walker.  (Docket No. 20).

By her complaint, Ms. McDonald alleges that Det. Walker is liable pursuant to 42 U.S.C.

§ 1983 for violating her constitutional rights in connection with her arrest (Count I), is liable for

intentional and negligent infliction of emotional distress (both numbered Count V), and is liable

for constitutional violations pursuant to the Massachusetts Civil Rights Act, Mass. Gen. Laws ch.

12, § 11I ("MCRA") (Count VI).  Det. Walker has moved to dismiss all of the claims against him.

He contends that he is entitled to qualified immunity as to the § 1983 claim, that the plaintiff

has failed to allege sufficient facts to state a claim for intentional infliction of emotional

distress, that he is entitled to immunity pursuant to Mass. Gen. Laws ch. 258, § 2 in connection

with the claim for negligent infliction of emotional distress, and that the plaintiff has failed to

plead sufficient facts to establish an MCRA claim as a matter of law.  The plaintiff has agreed to

the dismissal of the negligent infliction of emotional distress claim and otherwise opposes the

motion to dismiss.

For the reasons detailed herein, the Motion to Dismiss is ALLOWED as to the negligent

infliction of emotional distress claim, but otherwise DENIED.  This court finds that Det. Walker is

not entitled to qualified immunity at this stage, and that the plaintiff has alleged sufficient facts

to support her claims.

## II.  <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the

court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reason-

able inferences.  <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).  Applying

these principles, the relevant facts are as follows.

On or about May 22, 2012, four African American females entered a clothing store in

the Roslindale section of Boston, Massachusetts, and allegedly took merchandise from the

store and assaulted employees when they tried to intercede.  <u>Compl.</u> (Docket No. 1-1) ¶ 4.  One

of them allegedly brandished a knife during the incident.  Id.   The assailants fled the scene in a

green 1992 Honda Civic, License Plate No. 118SJ4.  The vehicle was registered to Fitzroy Swift.

Id. ¶ 5.  The Boston Police contacted Mr. Swift, who told them that he had registered the car for

a friend, a woman named Sharon McDonald, who he described as a 5'3" tall, 47 year old

woman of Jamaican descent, who lived in Brockton.  Id. ¶ 7.  Mr. Swift further stated that Ms.

McDonald had a "bunch of daughters" and he provided the police with a phone number for Ms.

McDonald.  Id.  No effort was made to trace the phone number.  Id. ¶ 34A.  Later that evening,

a person identifying herself as Sharon McDonald called the police station to inquire about the

incident.  Id. ¶ 8.  The caller denied any involvement with the incident, claimed that she did not

own the car involved, and stated that she did not know Mr. Swift.  Id.  No effort was made to

determine the name of the person associated with the number from which the call was made,

which differed from the number Mr. Swift had provided.  Id. ¶ 34A.

Det. Walker was assigned the investigation.  Id. ¶ 6.  While Det. Walker did obtain a

copy of a Massachusetts Driver's License photograph for a woman named Sharon McDonald, he

did not search the Registry of Motor Vehicles for any vehicles registered to a Sharon McDonald.

Id. ¶¶ 9, 34A.  If he had done so, he would have located a different vehicle registered to the

plaintiff.  Id. ¶ 18.

On June 1, 2012, Detective Walker reviewed a surveillance videotape from the store

showing the incident.  Id. ¶ 9.  Det. Walker indicated in his report that the oldest suspect "looks

like Sharon McDonald as she appears in her Massachusetts Driver's License Photo."  Id.  Det.

Walker then sought a warrant from the West Roxbury District Court for the arrest of Sharon

McDonald of 129 Pine Grove Drive, Brockton (the plaintiff), for Armed Robbery.  Id. ¶ 10.  The

plaintiff was arrested on the warrant at her home on June 19, 2012.  Id. ¶ 11.  At the time of

her arrest, the plaintiff denied having been in Boston on May 22, 2012.  Id.

      Prior to seeking the arrest warrant, Det. Walker showed plaintiff's photograph to the

victims of the assault, but they could not identify the plaintiff.  See Pl. Opp. (Docket No. 28) at 3

n.2.  Det. Walker did not show the photograph to Mr. Swift before seeking the warrant.  Compl.

¶¶ 19, 34A.  Nor did he trace the phone number that Mr. Swift had given for Ms. McDonald, or

take any other steps to confirm that the person for whom a warrant was being obtained was

the person who (allegedly) had access to the car registered in Mr. Swift's name.  Id. ¶ 34A.  The

physical description given by Mr. Swift did not match the plaintiff.  Id.

      The plaintiff, who suffered from anxiety and depression, became hysterical at the time

of her arrest.  Id. ¶¶ 12, 22.  She was transported to the Brockton Police Station and then

transferred to the West Roxbury District Court.  Id. ¶ 13.  At her arraignment, Ms. McDonald,

who had no criminal record, was placed on $5,000 cash bail based on the allegations about the

use of a weapon during the theft.  Id.  The plaintiff was unable to make bail, so she was taken to

the Suffolk County Jail for processing.  Id. ¶ 14.  She remained in the medical unit at the jail for

approximately two and a half days and was then placed in a two person cell.  Id. ¶ 16.  Eight

days after her arrest, on June 27, 2012, the plaintiff had a bail review in the Superior Court, at

which time she was released on personal recognizance.  Id. ¶ 17.

      Ms. McDonald filed a motion to dismiss the case against her on the basis that she was

incorrectly identified in the matter.  Id. ¶ 18.  On the day of the hearing, the plaintiff met with

Det. Walker, apparently for the first time.  Id.  During their conversation, Ms. McDonald denied

knowing Fitzroy Swift, denied having called the police station, established that the phone

number Mr. Swift had provided for Sharon McDonald was not her phone number, and identi-fied the vehicle which she drove, which was not a green Honda Civic.  Id.  Mr. Swift was also unable to identify the plaintiff in a photo array.  Id. ¶ 19.  Det. Walker spoke to the Assistant District Attorney, who agreed to have the matter dismissed.  Id. ¶ 20.  The court allowed the motion to dismiss on the grounds that Ms. McDonald "is not the proper subject of criminal complaint #1206CR1255 and was wrongfully charged herein."  Id.

The entire incident has left the plaintiff severely traumatized.  Id. ¶¶ 22-28.  She participated in an Internal Affairs Investigation of the incident.  Id. ¶ 30.  By letter dated August 7, 2015, the plaintiff was notified that the investigation resulted in "a charge of 'Neglect of Duty' against Detective Walker and he may subsequently be disciplined on this matter."  Pl. Opp. Ex. A.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.    Standard of Review

As noted above, when ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the pleadings, so viewed, fail to support "a plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

B.    **Qualified Immunity**

In Count I of the Complaint, Ms. McDonald alleges that Det. Walker violated her consti-

tutional rights by arresting her without probable cause.  The defendant seeks to dismiss this

count on the basis of qualified immunity. "Qualified immunity balances two important interests

– the need to hold public officials accountable when they exercise power irresponsibly and the

need to shield officials from harassment, distraction, and liability when they perform their

duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d

565 (2009).  The doctrine "is designed to protect 'all but the plainly incompetent or those who

knowingly violate the law.'"  Mlodzinski v. Lewis, 648 F.3d 24, 33 (1st Cir. 2011) (quoting Morse

v. Frederick, 551 U.S. 393, 429, 127 S. Ct. 2618, 168 L. Ed. 2d 290 (2007)).  This court recognizes

that qualified immunity "is to be resolved at the earliest possible stage in litigation" since the

"doctrine provides defendant public officials an immunity from suit and not a mere defense to

liability."  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  Nevertheless, this court

concludes that the myriad of disputed facts raised by the plaintiff's allegations precludes the

application of qualified immunity at this stage of this litigation.

In determining whether qualified immunity applies, the "court must decide: (1) whether

the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and

(2) if so, whether the right was 'clearly established' at the time of the defendant's alleged viola-

tion."  Id. at 269.  With respect to this second prong, the court must determine "(a) whether the

legal contours of the right in question were sufficiently clear that a reasonable officer would

have understood that what he was doing violated the right, and (b) whether in the particular

factual context of the case, a reasonable officer would have understood that his conduct

violated the right." <u>Mlodzinski</u>, 648 F.3d at 32-33.  For present purposes, this court will assume that the police had probable cause to arrest a Sharon McDonald.[1]  However, in light of the alleged deficiencies in the defendant's efforts to insure that the plaintiff was <u>the</u> Sharon McDonald who had access to the car seen at the robbery, or was the Sharon McDonald who called the police station to ask about the investigation, the defendant is not entitled to qualified immunity as a matter of law.

"It is clearly established law that the Fourth Amendment requires that arrests be based upon probable cause." <u>Martinez-Rodriguez v. Guevara</u>, 597 F.3d 414, 420 (1st Cir. 2010).  The determination of whether probable cause exists is based on "the totality of the circumstances." <u>United States v. Pardue</u>, 385 F.3d 101, 107 (1st Cir. 2004).  "Probable cause exists when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that [the suspect] had committed or was committing an offense." <u>Id.</u> (quoting <u>United States v. Fiasconaro</u>, 315 F.3d 28, 34-35 (1st Cir. 2002)).  According to the plaintiff, very basic inquiries, such as checking with Fitzroy Swift (assuming he was a credible witness who was not involved in the robbery), tracing the number of the phone call made to the police station by "Sharon

---

[1]  Appropriately, neither party is arguing at this stage that the issuance of the arrest warrant precludes a finding that Det. Walker violated the plaintiff's constitutional rights.  As the defendant recognizes, Det. Walker had to have probable cause to apply for the criminal complaint. <u>Def. Mem.</u> (Docket No. 21) at 6 (citing <u>Sietins v. Joseph</u>, 238 F. Supp. 2d 366, 375 (D. Mass. 2003)).  For the reasons discussed above, there is a question whether the defendant had probable cause to seek the complaint.  Moreover, a question has been raised regarding whether Det. Walker properly advised the magistrate who issued the complaint of all relevant facts.  <u>See</u> <u>Compl.</u> ¶ 34B.  It is "beyond peradventure that arrests procured on the basis of material false statements or testimony given in reckless disregard for the truth violate the Fourth Amendment." <u>Martinez-Rodriguez v. Guevara</u>, 597 F.3d 414, 420 (1st Cir. 2010) (and cases cited).

McDonald," running an inquiry at the Department of Motor Vehicles for cars registered to

Sharon McDonald, or ascertaining phone numbers available to the plaintiff, among other

things, would clearly have established that the plaintiff should not have been arrested for the

robbery.  Moreover, the physical description given by Mr. Swift of the person for whom he had

registered the car did not match the plaintiff.  See Compl. ¶ 34A.  Under such circumstances

there is a question whether the facts and circumstances known to Det. Walker "were sufficient

to warrant a prudent man in believing that the [plaintiff] had committed or was committing an

offense."  Daley v. Harber, 234 F. Supp. 2d 27, 33 (D. Mass. 2002) (quoting Vargas-Badillo v.

Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997)) (no qualified immunity where information available to

police prior to arrest did not establish probable cause).  Since "it is plausible that Plaintiff's

Fourth Amendment right to be free from unreasonable searches and seizures was violated at

the time of [her] arrest and incarceration[,]" due to a lack of probable cause, the motion to

dismiss will be denied with respect to Count I.  Rivera v. City of Worcester, No. 12-cv-40066-

TSH, 2012 WL 5354153, at *3 (D. Mass. Oct. 26, 2012).  See also Vargas-Badillo, 114 F.3d at 7

(where from the facts, as alleged, a court can find that "that there was clearly no probable

cause" for the arrest of the plaintiff, or that "no reasonably competent officer would have

found probable cause[,]" the defendant is not entitled to qualified immunity).

       C.    **Intentional Infliction of Emotional Distress**

      The plaintiff also has brought a claim for intentional infliction of emotional distress.  Det.

Walker has moved to dismiss this count on the grounds that the plaintiff has not pleaded

conduct which was "extreme and outrageous."  Since the facts have not been fully developed at

this juncture, the motion to dismiss will be denied.

> To make out a claim for intentional infliction of emotional distress under
> Massachusetts law, a claimant must prove: "(1) that the [defendant]
> intended to inflict emotional distress or that he knew or should have known
> that emotional distress was the likely result of his conduct; (2) that the
> conduct was extreme and outrageous, was beyond all possible bounds of
> decency and was utterly intolerable in a civilized community; (3) that the
> actions of the defendant were the cause of the plaintiff's distress; and (4)
> that the emotional distress sustained by the plaintiff was severe and of a
> nature that no reasonable man could be expected to endure it."

Limone v. United States, 579 F.3d 79, 93-94 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co.,

371 Mass. 140, 144-45, 355 N.E.2d 315, 318–19 (1976) (citations and internal quotation marks

omitted)).

The standard of "extreme and outrageous" conduct is "very high," even at the motion to

dismiss stage, and is designed to avoid litigation "where only bad manners and mere hurt

feelings are involved."  Santiago v. Keyes, 890 F. Supp. 2d 149, 159 (D. Mass. 2012) (quoting

Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)).  While the question is a close one, this

court finds that further development of the record is appropriate.  This is not a situation, like

Santiago, where the alleged wrongdoing was limited to the police officer's "decision not to

investigate whether Plaintiff had been falsely arrested given Plaintiff's protestations of

innocence and the availability of various items of potentially exonerating evidence."  Id. at 159

(court allows motion to dismiss IIED claim where plaintiff wrongfully identified as being the

subject of an out-of-state warrant).  Here, the allegation is that Det. Walker was the officer

designated to investigate the robbery.  He was the one who purported to discover the identity

of the perpetrator based on nothing more than a name and city given to him by a car owner

who had registered a car allegedly for someone else.  Det. Walker then personally mis-

identified the plaintiff as the person he was seeking by simply matching a name and disre-

garding facts known to him.  He was the one who allegedly failed to take even the most basic

steps to corroborate the identity of the person he was having named in an arrest warrant.  In

light of the "genuine issue" as to whether there was probable cause to arrest the plaintiff,

plaintiff should be permitted the opportunity to further explore the facts surrounding the

investigation leading to her arrest.  See McGrath v. Town of Sandwich, No. 13-12381-NMG,

2015 WL 5722728, at *7 (D. Mass. Sept. 29, 2015) (motion for summary judgment on IIED claim

denied where there is a question of fact as to whether the conduct was extreme and

outrageous).

> ### D.    Massachusetts Civil Rights Act

In Count VI of the Complaint, Ms. McDonald alleges that Det. Walker is liable under the

MCRA, Mass. Gen. Laws ch. 12, § and 11I.  "To state a claim under the MCRA, a plaintiff must

show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either

the United States or the Commonwealth of Massachusetts (2) has been interfered with, or

attempted to be interfered with, and (3) that the interference or attempted interference was

by threats, intimidation or coercion."  Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp.

2d 238, 247 (D. Mass. 2010).  "A 'threat' means the 'intentional exertion of pressure to make

another fearful or apprehensive of injury or harm.'"  Goddard v. Kelley, 629 F. Supp. 2d 115,

128 (D. Mass. 2009) (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467,

474, 631 N.E.2d 985 (1994)).  "'Intimidation' means putting a person in fear for the purpose of

compelling or deterring his or her conduct."  Id.  "'Coercion' means application of physical or

moral force to another to constrain him to do against his will something he would not

otherwise do." Id.  The defendant has moved to dismiss this count on the grounds that, as a matter of law, the direct violation of constitutional rights, in this case the alleged unreasonable seizure of the plaintiff, cannot be both the violation of constitutional rights and the requisite "threats, intimidation or coercion." See id. at 128-29.  For the reasons that follow, the motion to dismiss this claim will be denied as well.

There is a line of cases in which courts have held that "MCRA liability arises only when (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do" and that "a direct violation [of] a person's constitutional rights, without threats, coercion or intimidation, does not implicate the Act." Ciolino v. Eastman, __ F.3d __, 2015 WL 5163046, *10 (D. Mass. Sept. 3, 2015) (internal quotation marks and citations omitted).  Moreover, it appears that "[t]he majority of courts have held that in cases involving wrongful arrests or excessive force, the fact of a Fourth Amendment violation, standing alone, does not give rise to a claim under the MCRA." Id. at *11 (and cases cited).  On the other hand, there are cases in which courts have held that a party can seek redress under the MCRA if there was no probable cause for an arrest. See Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989).  As the court explained in a footnote in Nuon v. City of Lowell, 768 F. Supp. 2d 323 (D. Mass. 2011):

> An arrest without probable cause also establishes liability under the MCRA. The MCRA was intended to provide a state law remedy co-extensive with 42 U.S.C. § 1983, except that the MCRA also reaches private action, and requires a showing that a constitutional violation was effected "by threats, intimida-tion or coercion." See Bally v. Northeastern Univ., 403 Mass. 713, 718, 532 N.E.2d 49 (1989); Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23, 473 N.E.2d 1128 (1985).  An arrest without probable cause has been found to constitute coercion within the meaning of the MCRA. See Daley v. Harber, 234 F.Supp.2d 27, 31-32 (D.Mass.2002) (holding that a police officer's actions in effecting arrest without probable cause constituted coercion under the

MCRA); *Zurakowski v. D'Oyley,* 46 F.Supp.2d 87, 88 (D.Mass.1999) (stating that "the undisputed coercion involved in taking Zurokowsky [sic] into custody supplied that element of the Massachusetts civil rights claim."). *See also Santiago v. Fenton,* 891 F.2d 373, 383 (1st Cir. 1989) (finding that if there was no probable cause for plaintiff's arrest, he can seek redress under 42 U.S.C. § 1983 and under the MCRA); *Sarvis v. Boston Safe Deposit & Trust Co.,* 47 Mass.App. 86, 92–93, 711 N.E.2d 911 (1999); *Reprod. Rights Network v. President of the Univ. of Mass.,* 45 Mass.App.Ct. 495, 508, 699 N.E.2d 829 (1998).

<u>Nuon</u>, 768 F. Supp. 2d at 335 n.8.  In light of the uncertainty of the legal issue presented by the defendant, and the fact that the development of the record may establish the existence of other relevant facts, the motion to dismiss will be denied.  The issue can be addressed further by the court at a later stage in the proceedings.

### IV.  <u>CONCLUSION</u>

For the reasons detailed herein, Det. Walker's Motion to Dismiss (Docket No. 20) is ALLOWED as to the count for negligent infliction of emotional distress, but otherwise DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge