UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARON MCDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.  1:15-CV-11915-JGD |
| v. ) | |
| ) | |
| CITY OF BOSTON and RICHARD ) | |
| WALKER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT RICHARD WALKER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant Richard Walker ("Walker") hereby submits his Memorandum of Law in support of his Motion for summary judgment pursuant to Fed. R. Civ. P. 56, on Plaintiff Sharon McDonald's ("Plaintiff") claims for wrongful arrest under 42 U.S.C. § 1983, intentional infliction of emotional distress ("IIED"), and violation of the Massachusetts Civil Rights Act ("MCRA").

## INTRODUCTION

The undisputed material facts and applicable law directly belie Plaintiff's claims for violation of § 1983, IIED, and violation of the MCRA.  Plaintiff first alleges that Walker violated § 1983 by depriving Plaintiff of her constitutional rights.  However, even assuming the facts as alleged by Plaintiff are true, Walker's conduct does not rise to the requisite conscious-shocking threshold necessary to be actionable under § 1983.  Further, even if Walker's actions did result in a deprivation of Plaintiff's rights, Walker is entitled to qualified immunity.  Plaintiff next alleges that Walker's conduct supports a cognizable IIED claim under Massachusetts law.   However, it is well-settled that a police officer carrying out his duty in applying for a warrant or making an

arrest, even if such an arrest is unlawful or without probable cause, does not rise to the level of extreme and outrageous conduct as required to recover for IIED.  Finally, Plaintiff's MCRA claim fails where Plaintiff has not alleged, and the record is utterly devoid, of any facts demonstrating that Walker engaged in coercion, intimidation or threatened Plaintiff in any way.

For any and all of the reasons stated herein, summary judgment should enter in Walker's favor, and Plaintiff's claims should be dismissed with prejudice.

## FACTS[1]

Walker is a detective with the Boston Police Department and has held that position since 2000.  SOF, ¶ 1.  On May 22, 2012, Walker responded to a report of an armed robbery at a store known as Madd Rags located in Roslindale, Massachusetts.  SOF, ¶ 2.  The suspects were four African-American females, who allegedly fled the scene in a green 1992 Honda Civic registered to Fitzroy Swift ("Swift").  SOF, ¶¶ 3–4.  Walker contacted Swift, who claimed that he did not use the vehicle, but that he had registered it for use by his friend, Sharon McDonald ("McDonald"), of Brockton, Massachusetts.  SOF, ¶ 5.  During the conversation with Walker, Swift described McDonald as a 47 year old Jamaican woman who was roughly 5'3" and had several children. SOF, ¶ 6.  Swift also provided McDonald's telephone number, but could not provide a specific address in Brockton where she resided.  SOF, ¶ 7.

Upon returning to the police station, Walker called the telephone number provided by Swift, and left a voice message asking the recipient to call him at the Boston Police Department. SOF, ¶ 8.  Walker performed a search for Sharon McDonald through the Registry of Motor Vehicles ("RMV") database.  SOF, ¶ 9.  This search revealed that there was only one Sharon McDonald with a Brockton address registered in the database.  Id.

---

[1] Walker's statement of undisputed material facts ("SOF") is filed herewith.

During Walker's ongoing investigation, an individual claiming to be Sharon McDonald called the police station in response to his earlier voice message.  SOF, ¶ 10.  This individual denied involvement with the robbery, claimed not to know Swift, and refused to meet with Walker in person.  Id.   The following day, May 23, 2012, Walker and Detective Daniel Conboy of the Boston Police Department, conducted photo arrays for the victims of the robbery, and the victims were unable to identify anyone from the photos.  SOF, ¶ 11.  Walker next obtained and reviewed the surveillance video from Madd Rags, and noted that a woman in the surveillance footage resembled the Massachusetts driver's license photo of Sharon McDonald.  SOF, ¶ 12.

Based upon his investigation, Walker sought an arrest warrant for an individual named Sharon McDonald of 129 Pine Grove Drive, Brockton, Massachusetts.  SOF, ¶ 13.  Walker did not include in his application any information regarding the photo array conducted with the victims of the robbery.  SOF, ¶ 14.  On June 19, 2012, Brockton Police arrived at Plaintiff's residence and arrested her for the armed robbery on May 22, 2012.  SOF, ¶ 15.  Walker was not one of the arresting officers.  SOF, ¶ 16.  On or around July 10, 2012, Walker appeared for a pretrial hearing and learned that Plaintiff was claiming there had been a mistake with regard to her identity and the arrest.  SOF, ¶ 17.  After meeting with Plaintiff, Walker determined that she was not the Sharon McDonald involved in the May 22, 2012 armed robbery.  SOF, ¶ 18.  Immediately upon discovering that Plaintiff was not the individual involved in the robbery, Walker met with the district attorney and requested that the charges against Plaintiff be dismissed.  SOF, ¶ 19.

PROCEDURAL HISTORY

On April 28, 2015, Plaintiff filed the instant action against Walker and the City of Boston (the "City", and collectively "Defendants") in Suffolk County Superior Court.  Defendants subsequently removed the matter to this Court as it raised a federal question.  The Complaint,

asserts four counts against Walker, namely Count I – a wrongful arrest 42 U.S.C. § 1983 claim; Count V – intentional infliction of emotional distress; Count V – negligent infliction of emotional distress; and Count VI – violation of the MCRA.   Walker subsequently moved to dismiss all claims.  See Docket No. 20.   On November 12, 2015, the Court granted Walker's Motion to Dismiss as to Plaintiff's claim for negligent infliction of emotional distress.  See Docket No. 35. Discovery in this case has since closed.  Walker now moves for summary judgment on the three remaining counts asserted against him by Plaintiff.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  If the opposing party's evidence is "merely colorable, or is not significantly probative," summary judgment is appropriate.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (citations omitted).  The movant need only show "an absence of evidence to support the nonmoving party's case" to warrant the entry of summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## ARGUMENTS AND AUTHORITIES

### I.      Plaintiff's Claims under § 1983 Fail.

Plaintiff contends that Walker violated 42 U.S.C. § 1983 by depriving Plaintiff of her rights under the Fourth, Fifth, and Fourteenth Amendments.  See Complaint, ¶ 33.  Specifically, Plaintiff alleges that Walker acted with gross indifference and reckless disregard to Plaintiff's constitutional rights, and that he "intentionally filed materially false and/or inaccurate pleadings with the intention of causing the arrest" of Plaintiff.  Id. at ¶ 34.  Pursuant to 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects or causes to

be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "A claim under section 1983 has two essential elements [:] First, the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061–62 (1st Cir. 1997).  Here, Walker does not dispute that he was acting in his official capacity during the events giving rise to this action.  However, Walker's actions did not deny Plaintiff any rights secured by law.  Even assuming Walker's actions did infringe on Plaintiff's rights, he is entitled to qualified immunity.

       *i.*       *Walker's Actions Did Not Rise to a Level of Actionable Conduct under § 1983.*

Notwithstanding the unfortunate outcome of Walker's investigation and application for the arrest warrant, his conduct in relation to the investigation and warrant application did not rise to an actionable level under § 1983.  To be actionable, "misconduct by state actors must exceed a high threshold of allowance for human shortcomings in managing the intricate processes of government."  DeToledo v. County of Suffolk, 379 F. Supp. 2d 138, 143 (D. Mass. 2005).  "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("It is on the contrary, behavior at the other end of the spectrum that would most likely support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."); Baker v. McCollan, 443 U.S. 137, 145 (1979) (finding "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law"); Davidson v. Cannon, 474 U.S. 344, 347–

48 (1986) (finding merely negligent conduct "does not approach the sort of abusive conduct that the Due Process Clause was designed to prevent").

Here, nothing about Walker's conduct evinces a reckless or conscious disregard for Plaintiff's constitutional rights. Walker interviewed the victims, followed up on a lead related to the getaway vehicle, questioned Swift, the registered owner of the getaway vehicle, and obtained the name of the suspect, Sharon McDonald. SOF, ¶¶ 2–5. Walker then searched for the suspect in the RMV database, which revealed a single Sharon McDonald in Brockton, Massachusetts, matching the information he obtained from Swift. SOF, ¶ 9. Walker also prepared and conducted photo arrays with the two victims, which were inconclusive. SOF, ¶ 11. Walker called McDonald, and attempted unsuccessfully to question her. SOF, ¶ 10. Likewise, Walker obtained the surveillance video, and determined there was a resemblance between the license photograph obtained through the RMV search and one of the suspects in the video. SOF, ¶ 12. Ultimately, the record demonstrates that Walker investigated the robbery, and proceeded on a good faith basis notwithstanding the unfortunate outcome.

The fact that Walker could have performed certain aspects of the investigation differently, or perhaps could have chosen to pursue alternative methods of investigation, does not mean his actions rose to the level of a conscious or reckless disregard of Plaintiff's rights.   See Parks v. Town of Leicester, No. 10-30120-FDS, 2012 WL 2088926, at *7 (D. Mass. June 7, 2012) ("In general, an officer may not be liable under § 1983 for mere negligence in investigating a crime and reaching a probable cause determination."); Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998) (finding that with regard to a warrant application, "there must be allegations of deliberate falsehood or of reckless disregard for the truth…. It is not enough to allege negligence").   Over the course of his investigation, Walker's actions simply do not "shock the

conscience" as is necessary to meet the high threshold for actionable conduct under § 1983.  See DeToledo, 379 F. Supp. 2d at 144.

Furthermore, Plaintiff cannot point to a single fact, nor is there any such fact in the record, which demonstrates that Walker had any animus towards her or that he acted maliciously or purposefully.  In fact, the evidence shows that the opposite is true.  Walker had never met Plaintiff prior to the pretrial hearing, and at all times believed she was someone else, a fact which directly belies any argument that Walker acted with malicious intent.  SOF, ¶¶ 17–18.  As soon as Walker learned that the wrong Sharon McDonald had been arrested, he immediately spoke with the District Attorney and requested that all charges be dismissed.[2]  SOF, ¶ 19.  Thus, Plaintiff can show neither a conscious or reckless disregard of her rights, nor any intentional, purposeful act by Walker.  See Parks, 2012 WL 2088926, at *7 ("[L]iability attaches only when the investigating officer provides false information knowingly and intentionally, or with reckless disregard for the truth.") (internal quotation marks omitted).

Additionally, the fact that Plaintiff was innocent in this case, and was arrested based on a case of mistaken identity does not preclude this Court from finding for Walker.  In Baker v. McCollan, the Supreme Court addressed an analogous set of circumstances in examining a § 1983 action, and stated:

> Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim for deprivation of liberty without due process of the law.  The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted–indeed, for every suspect released.

---

[2]  To the extent Plaintiff contends that Walker is responsible for her continued incarceration, such a position is belied by the facts and applicable law.  As discussed supra, as soon as Walker learned the wrong Sharon McDonald had been arrested, he immediately took action to rectify the situation.  Likewise, "[g]enerally, once the arrest has been properly effected, it is the magistrate and not the policeman who should decide whether probable cause has dissipated to such an extent following the arrest that the suspect should be released."  Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986); DeToledo, 379 F. Supp. 2d at 145.

Baker, 443 U.S. at 145 .  Similarly, in DeToledo, the court found that Plaintiff had no cognizable § 1983 claim where she was a victim of a negligent case of mistaken identity.  DeToledo, 379 F. Supp. 2d at 145.  There, a prison security guard assumed the person he was looking for was using the bathroom, and attempted to verify the identity of the plaintiff by consulting a driver's license that did not belong to her.  Id. at 141.  Despite the fact that the officer negligently placed the plaintiff under arrest, the DeToledo court found that the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss off or injury to life, liberty, or property."  Id. at 144, quoting Daniels v. Williams, 474 U.S. 327, 328 (1986).

Notwithstanding the fact that Walker regrettably identified Plaintiff as a suspect, his actions do not rise to the level of requisite conduct to be actionable under § 1983, and therefore Plaintiff's claim fails as a matter of law.

> ii.     *Even if Walker's Actions Infringed on Plaintiff's Rights, Walker is Entitled to Qualified Immunity.*

Even assuming Walker's actions infringed on Plaintiff's constitutional rights, which they did not, Walker is entitled to qualified immunity.  The doctrine of qualified immunity insulates public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Under the First Circuit's two-part test for qualified immunity, "[a] court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  The "clearly established" step has two aspects:

> [o]ne aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation.  To overcome qualified immunity, the contours of the

> right must be sufficiently clear that a reasonable official would understand what he is doing violates that right.  The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights.

Id.  (internal quotation marks and citations omitted).  "[T]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional."  Id.; see also Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

A relatively recent District of Massachusetts case addressed an extremely similar situation and found the police officer was entitled to qualified immunity.  In Parks v. Town of Leicester, a police officer responded to the scene of an assault, and was told by the victim that the assailant was named "Dawn Spencer."  Parks, 2012 WL 2088926, at *1.  The officer proceeded to perform a computerized search of the name "Dawn Spencer" in the RMV and criminal history databases, and found a record associated with Dawn Parks, who was going by the name "Dawn Spencer" at the time, and had no involvement whatsoever in the assault.  Id. at *2.  After mistakenly attributing the assault to the plaintiff based on the database search, the officer prepared and filed a criminal complaint against the plaintiff.  Id.  The plaintiff was later arrested, jailed, and subsequently had all charges dismissed once it was discovered that she was not involved in the assault.  Id. at *2–3.  The plaintiff brought claims under both § 1983 and the MCRA against the investigating officer.  Id. at *3.

In choosing to analyze the second step of the qualified immunity analysis, which the court determined to be dispositive, the Parks court examined whether "the legal contours of the right were sufficiently clear that a reasonable officer would have understood what he was doing violated the right, and … whether in the particular factual context of the case, a reasonable officer would

have understood that his conduct violated the right."[3] Id. at *9.  Specifically, the court questioned whether "a reasonable officer clearly would have known that he could not base a probable cause determination on a match between a suspect's name and the name of a person identified in a database record." Id.

Relying partly on a decision from the Fifth Circuit and the fact that, "[t]o the court's knowledge, no decision in this Circuit clearly answered that narrower question prior to the actions that are at issue in this case[,]" the court found that the officer's actions "preclude a finding … that [the officer] acted in violation of clearly established law." Id. at *10 (further holding that the officer was "therefore protected from liability by qualified immunity"); see also McAllister v. Desoto Cty., No. 11-60482, 2012 WL 1521642, at *6 (5th Cir. May 1, 2012).  In making this ruling, the court found that "a reasonable officer might also have made the same judgment" with regard to whether he could base a probable cause determination on a matching name from a database search. Parks, 2012 WL 2088926, at *10.

Like the officer in Parks, Walker determined that an individual with a name matching the suspect, obtained through a computerized search, was the actual person he was looking for.  Here, Walker knew he was looking for a Sharon McDonald from Brockton, MA, and found only one such individual in the RMV database. SOF, ¶ 9.  Notwithstanding certain oversights, Walker's investigation went far beyond the officer's efforts in Parks.  Walker obtained security footage from Madd Rags and compared the footage to the license photograph he obtained through his search, ultimately determining there was a resemblance to one of the older suspects. SOF, ¶ 12.  Walker

---

[3] The First Circuit has held that "where the answer to the first prong of the immunity question may depend on further development of the facts, it may be wise to avoid the first step" and proceed to the second step in the analysis of whether qualified immunity is applicable.  Maldonado, 568 F.3d at 270; Parks, 2012 WL 2088926, at *9.

also contacted whom he believed to be Sharon McDonald, asked her questions, and unsuccessfully requested that she come in for further questioning.  SOF, ¶ 10.

Based on the holding in Parks, Walker's determination of probable cause based on several different investigative efforts performed in good faith, including matching a name to the suspect through a database search, must be reasonable.  Taking into account the undisputed facts, and based on the analogous case law which favors qualified immunity, Walker would not and could not have understood that his conduct would have violated Plaintiff's rights.  Therefore, Walker is entitled to qualified immunity, and summary judgment should enter for Walker on Plaintiff's § 1983 claim.

## II.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails because Walker's Conduct Was Not Extreme and Outrageous.

Plaintiff alleges IIED under count V of her Complaint.  See Complaint, ¶¶ 53–55.  To establish an IIED claim under Massachusetts law, a plaintiff mush show that

> (1) the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure.

Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009), quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144 (1976).

The Supreme Judicial Court has held that "[n]either applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered 'utterly intolerable in a civilized community.'"  Sena v. Commonwealth, 417 Mass. 250, 264 (1994) (finding no extreme and outrageous conduct where negligence by police lead to wrongful arrest and jailing of plaintiffs);

see also Boyle v. Barnstable Police Dept., 818 F. Supp. 2d 284, 310 (D. Mass. 2011) (awarding summary judgment to defendant and finding that "[n]either applying for an arrest warrant, nor making an arrest pursuant to an issued warrant, can be considered utterly intolerable in a civilized community") (internal quotation marks and citations omitted); Eason v. Alexis, 824 F. Supp. 2d 236, 245 (D. Mass. 2011) (finding a "false arrest, without more, cannot give rise to an IIED claim"); Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991) (police officers' conduct was not extreme and outrageous where they mistook plaintiff for escaped felon, arrested him and physically injured him); Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) ("Even if the arrest was made without probable cause, Plaintiff's IIED claim would still fail because the facts as alleged are not sufficiently outrageous to support such a cause of action.").

Likewise, "the distress that invariably accompanies an arrest, while it can be quite severe, is not beyond the limits of what a reasonable person can be expected to endure." Sholley v. Town of Holliston, 49 F. Supp. 2d 14, 22 (D. Mass. 1999). As stated by the District Court,

> [i]t is reasonable to conclude that, for most people, arrest is a traumatic experience, especially if the charges later prove to be false. However, this factor alone does not give rise to a claim for intentional infliction of emotional distress…. While the plaintiff's experience was undoubtedly highly unpleasant, the facts of this case simply do not support a claim for intentional infliction of emotional distress.

Finucane v. Town of Belchertown, 808 F. Supp. 906, 911 (D. Mass. 1992).

Here, any role Walker had in causing Plaintiff to experience a false or wrongful arrest, while unfortunate, does not rise to the level of extreme and outrageous conduct. The law is clear that an officer's actions in applying for an arrest warrant or arresting an individual are not "extreme and outrageous" even if the arrest was wrongful or made without probable cause. Accordingly, summary judgment should enter for Walker.

## III. Plaintiff's MCRA Claim Fails Because There Was No Threat, Intimidation, or Coercion.

In Plaintiff's final count, she alleges that Walker interfered with and deprived her of her exercise and enjoyment of civil rights under M.G.L. c. 12, § 11l.  See Complaint, ¶ 61.  "To establish an MCRA claim, Plaintiff must prove that his exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion."  Santiago v. Keyes, 890 F. Supp. 2d 149, 153–54 (D. Mass. 2012), citing MASS. GEN. LAWS ch. 12, §§ 11h, 11l.  However, "to succeed on an MCRA claim, a plaintiff, unlike with section 1983, must show that the derogation of rights occurred 'by threats, intimidation or coercion.'"  Id., quoting Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989).  For purposes of a claim brought under the MCRA

> [a] "threat" means the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.  "Intimidation" means putting a person in fear for the purpose of compelling or deferring his or her conduct. "Coercion" means application of physical or moral force to another to constrain him to do against his will something he would not otherwise do.

Santiago, 890 F. Supp. 2d at 154 (internal citations and quotations omitted).  Therefore, "the MCRA contemplates a two part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something he has the constitutional right to do."  Id.  Based on the undisputed facts, Plaintiff cannot meet this burden.

### i.    Walker Did Not Threaten, Coerce, or Intimidate McDonald.

Courts interpreting the MCRA have consistently found that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]."  Longval v. Comm'r of Correction, 404 Mass. 325, 333 (1989).  In Longval, the SJC found that "[s]hackling and handcuffing [a prisoner] … was not by itself coercive under the Civil Rights Act… ."  Id.  If "officials had some further purpose in treating [the prisoner]

as they did, threats, intimidation, or coercion might be involved." Id.  Most importantly, the SJC clearly stated that "[c]onduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly." Id.; see also Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 473 (1994); Parks v. Town of Leicester, No. 10-30120-FDS, 2011 WL 864823, at *5 (D. Mass. Mar. 9, 2011) ("The present case involves a 'direct' violation: the allegedly coercive act (the arrest) was itself a violation.  The Complaint does not contain any facts from which the Court can infer use of 'threats, intimidation, or coercion' on the part of Sergeant Fontaine or the Town by which they interfered with Plaintiff's right to be free from arrest without probable cause."); Gallagher v. Commonwealth, No. Civ. A. 00-11859-RWZ, 2002 WL 924243, at *3 (D. Mass. Mar. 11, 2002) ("[T]he constitutional violation itself cannot also serve as the prerequisite 'threats, intimidation or coercion' under the MCRA."); Goddard v. Kelley, 629 F. Supp. 2d 115, 129 (D. Mass. 2009) (same).

Here, Walker's application for the arrest warrant does not by itself qualify as a coercive or intimidating act or threat.  Indeed, Plaintiff has not alleged that Walker had "any further purpose" nor can she point to a single fact in the record demonstrating any animus or motivation for Walker's actions, because none exists.  It is undisputed that Walker was not an arresting officer, and met Plaintiff for the first time *after the arrest* at the pretrial hearing.  SOF, ¶¶ 16–18.  As previously discussed herein, Walker immediately took actions to remedy the situation, clearly demonstrating that he bore absolutely no ill will toward Plaintiff or had any ulterior motive or purpose in applying for the warrant.  SOF, ¶ 19.  Even if Walker's conduct constituted a direct violation of Plaintiff's rights, which it did not, such a violation, without more, cannot support a cognizable MCRA claim.

"[T]he majority of courts have held that in cases involving wrongful arrests or excessive force, the fact of a Fourth Amendment violation, standing alone, does not give rise to a claim under the MCRA." Ciolino v. Eastman, 128 F. Supp. 3d 366, 380 (D. Mass. 2015). This Court has consistently found that "a fairer reading of the SJC's decisions maintains a separation of the elements of 'violation' and 'threats, intimidation or coercion' in the MCRA. Santiago, 890 F. Supp. 2d at 156 (stating that "in both Longval and Planned Parenthood League, the SJC noted that a direct violation, without more, does not satisfy the MCRA") (internal citations omitted); Eck v. Neal, No. 1:14-CV-13693-ADB, 2017 WL 4364171, at *7 (D. Mass. Sept. 29, 2017) ("When a MCRA claim is asserted alongside a claim for relief under § 1983, plaintiff must establish threats coercion, or intimidation in addition to a constitutional violation.") (internal quotation marks and citations omitted); Lund v. Henderson, 22 F. Supp. 3d 94, 107 (D. Mass. 2014) (awarding summary judgment for defendant and finding that even if plaintiff was arrested without probable cause, such a "direct violation of a constitutional right does not establish a MCRA violation because it is not an attempt to force someone to do something the person is not lawfully required to do") (internal quotation marks and citations omitted).

Based on the above authority, Plaintiff's arrest *alone* cannot provide the basis for a cognizable MCRA claim absent an additional showing of coercion, intimidation, or a threat. Plaintiff can make no such showing, as the undisputed facts clearly demonstrate that Walker engaged in no such conduct. Thus, Plaintiff's MCRA claim fails, and summary judgment should enter for Walker.

<u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's remaining claims against Walker under Counts I, V, and VI fail. The undisputed facts do not demonstrate any conduct by Walker that is actionable

under § 1983.  Even if Walker's actions did infringe on Plaintiff's rights, Walker is entitled to qualified immunity.  Likewise, Plaintiff's IIED claim fails because Walker's actions do not rise to the level of extreme and outrageous conduct.   Finally, the undisputed facts demonstrate that Walker did not engage in coercion, intimidation, or threatening behavior toward Plaintiff, which is required to recover under the MCRA. Thus, Defendant Richard Walker respectfully requests that this court enter summary judgment in his favor on all counts, and dismiss all claims with prejudice.

*[SIGNATURES ON FOLLOWING PAGE]*

Respectfully submitted,

Richard Walker,

By his attorney,


*/s/ William T. Hogan III*
William T. Hogan III (BBO# 237710)
bill.hogan@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
(617) 217-4700
(617) 217-4710

Dated:  February 28, 2018


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on this date.

Dated: February 28, 2018                    */s/ William T. Hogan III*
                                             William T. Hogan III