UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARON McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.  15-11915-JGD |
| CITY OF BOSTON and | ) | |
| RICHARD WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

September 20, 2018

DEIN, U.S.M.J.

### I.  INTRODUCTION

The plaintiff, Sharon McDonald, was arrested on an arrest warrant obtained by the

defendant, Richard Walker, a detective with the Boston Police Department.  The plaintiff was

unable to post bail and spent eight days in jail before being released on her own recognizance.

Her arrest was later determined to be the result of mistaken identity, and the charges against

her were dismissed.  McDonald subsequently brought suit against Det. Walker and the City of

Boston.  Following rulings on the defendants' motions to dismiss,[1] the plaintiff is proceeding on

---

[1]  On November 12, 2015, this court granted the City's motion to dismiss claims under Section 1983
(Count II), and the MCRA (Count VI), as well as claims for vicarious liability (Count IV), and for intentional
infliction of emotional distress (Count V).  (Docket No. 34).  On the same day, this court allowed Det.
Walker's motion to dismiss the claim against him for negligent infliction of emotional distress (Count V).
(Docket No. 35).

claims against Det. Walker for false arrest, pursuant to 42 U.S.C. § 1983 ("Section 1983") (Count I) and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I ("MCRA") (Count VI), and for intentional infliction of emotional distress ("IIED") (Count V).  She is also asserting claims against the City of Boston for negligence and negligent infliction of emotional distress ("NIED") (Counts III and V,[2] respectively).

The matter is presently before the court on Det. Walker's "Motion for Summary Judgment" (Docket No. 65), by which Det. Walker seeks summary judgment on all of McDonald's claims against him.  The matter is also before the court on McDonald's "Motion for Partial Summary Judgment on Liability" (Docket No. 69), by which McDonald seeks summary judgment on her Section 1983 claim against Det. Walker, and her negligence claim against the City of Boston.[3]  In connection with her motion for partial summary judgment, McDonald has also filed a "Motion to Strike Evidence of the Surveillance Video" (Docket No. 75), by which McDonald seeks to exclude surveillance video footage of the crime Det. Walker was investigating, as well as any testimony that makes reference to the video.  For all of the reasons detailed herein, the motions are ALLOWED IN PART and DENIED IN PART as follows:

1.      Plaintiff's Motion for Partial Summary Judgment (Docket No. 69) is ALLOWED as to her Section 1983 claim against Det. Walker (Count I) (liability only) and DENIED as to her negligence claim against the City of Boston (Count III).

---

[2]  Both the IIED claim and the NIED claim are numbered as Count V.

[3]  While some of the pleadings reference the NIED claim against the City in passing, no party argued the merits of this claim.  Therefore, this court assumes that the NIED claim against the City is not the subject of the plaintiff's motion for partial summary judgment, and the City of Boston has not moved for summary judgment.  Therefore, the NIED claim will not be discussed any further herein.

2.      Det. Walker's Motion for Summary Judgment (Docket No. 65) is DENIED as to the

Section 1983 claim (Count I) and ALLOWED as to the MCRA (Count VI) and IIED claims (Count V)

against him.

3.      Plaintiff's Motion to Strike Evidence of Surveillance Video (Docket No. 75) is

DENIED, provided, however, that the defendants are limited to the version of the video

produced to the plaintiff.

## II. <u>STATEMENT OF FACTS</u>[4]

The following facts are undisputed unless otherwise indicated.  Defendant Richard

Walker is a detective with the Boston Police Department.  DF ¶ 1.  On or about May 22, 2012,

Det. Walker responded to a report of an armed robbery at a store in Roslindale committed by

four African-American women.  DF ¶¶ 2-3; PF ¶¶ 1-2.  The store clerks told Det. Walker that the

suspects fled the scene in a 1992 green Honda Civic, and provided him with the license plate

number.  DF ¶ 4; PF ¶ 3.  Det. Walker went to the residence of the registered owner of the car,

Fitzroy Swift, and spoke with a woman at the residence who identified herself as Swift's sister.

PF ¶ 6.  She called Swift and handed the phone to Det. Walker.  PF ¶ 8.  Swift told Walker that

he had registered the car for a friend, Sharon McDonald, who lived in Brockton.  DF ¶ 5.  Swift

indicated that McDonald was Jamaican, 47 years old, 5'3", and had several daughters.  DF ¶ 6;

PF ¶¶ 10-11.  Swift provided Det. Walker with a telephone number for McDonald, but did not

---

[4] Unless otherwise indicated, the facts are derived from the following materials: (1) Det. Walker's Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment ("DF") (Docket No. 67); (2) the exhibits attached to the Affidavits of William T. Hogan, III (Docket No. 68), Matthew T. Brown, Esq. (Docket No. 79), and Lisa M. Logerfo, Esq. (Docket No. 80) ("Def. Ex. __"); and (3) Plaintiff's Statement of Undisputed Facts in Support of her Motion for Partial Summary Judgment on Liability ("PF") (Docket No. 70) and the exhibits attached thereto ("Pl. Ex. __").

provide a specific address for McDonald's residence in Brockton.  DF ¶ 7.  Swift refused to

provide Det. Walker with his location and refused to meet with him.  PF ¶ 9.

Det. Walker called the number Swift provided and left a voicemail.  DF ¶ 8.  Five minutes

later, Walker received a call back from an individual with a Jamaican accent who identified

herself as Sharon McDonald.  DF ¶ 10; PF ¶ 15.  She stated that she was not involved in the

robbery and did not know anyone named "Fitz," but later stated that "if you explain to me what

happened, I can tell you in return what happened."  Id.  Det. Walker asked her to come to the

station, but she refused.  PF ¶ 16.

Det. Walker searched the Registry of Motor Vehicles ("RMV") for individuals with a

license named "Sharon McDonald."  PF ¶ 13.  Only one such individual, the plaintiff, was listed

as residing in Brockton.  Id.  The plaintiff's license photograph was five years old and her height

was listed as 5'8".  PF ¶ 18.  Det. Walker assembled a photo array that included the plaintiff's

driver's license picture and presented the array to two store clerks who witnessed the robbery.

PF ¶ 19.  Neither clerk identified the plaintiff.  Id.  Det. Walker also ran a criminal background

check on both the plaintiff and Swift.  PF ¶¶ 17, 20.  The plaintiff had no criminal record.  PF ¶

20.  Swift had an extensive criminal record with over 31 charges, including charges for armed

robbery.  PF ¶ 17.

Det. Walker obtained and reviewed surveillance video from the store which included

footage from the time of the robbery.  PF ¶ 21; DF ¶ 12.  The surveillance picture was not very

good, as the clarity "wasn't definite."  Pl. Ex. 3 at 123.  In his Supplemental Incident Report, Det.

Walker indicated that "[o]ne of the suspects (the oldest) looks like Sharon Mcdonald [sic] as she

appears in her Massachusetts Drivers License."  PF ¶ 26.  Det. Walker sought an arrest warrant

for the plaintiff for armed robbery but did not mention the failed photo arrays in his warrant application.  DF ¶¶ 13-14; Pl. Ex. 6.  Det. Walker testified that his failure to mention the photo arrays was an oversight, as it is his normal practice to do so.  PF ¶ 32.  An arrest warrant was issued for the plaintiff and the plaintiff was arrested by Brockton police.  PF ¶ 34; Pl. Ex. 4 at 2.  At her arraignment, McDonald was unable to make the $5,000 cash bail set by the court, and she remained incarcerated for eight days until her bail was reduced to personal recognizance and she was released.  Pl. Ex. 8 at 2-3.

On or around July 9, 2012, Det. Walker met with Swift and presented him with a photo array that included the plaintiff's driver's license picture.  PF ¶ 40.  Swift did not identify the plaintiff as the Sharon McDonald he knew.  Id.  The next day, Det. Walker met with the plaintiff, who was in court with her attorney.  DF ¶¶ 17-18; PF ¶ 36; Pl. Ex. 4 at 2.  He asked the plaintiff if she drove a green Honda Civic.  PF ¶ 38.  She replied that she did not and had another vehicle registered in her name.  Id.  Walker also observed that the plaintiff did not have a Jamaican accent and was not 5'3".  Pl. Ex. 3 at 234.  As a result of this meeting, Det. Walker determined that the plaintiff was not the Sharon McDonald involved in the armed robbery and requested that the District Attorney drop the charges against her.  DF ¶¶ 18-19; PF ¶ 39.  On July 23, 2012, the court allowed the Commonwealth's motion to dismiss on the grounds that she "is not the proper subject of [the] criminal complaint" and had been "wrongfully charged[.]"  PF ¶ 41.

Additional factual details relevant to the court's analysis are described below where appropriate.

### III. <u>ANALYSIS</u>

**A.      <u>Summary Judgment Standard of Review</u>**

Both McDonald and Det. Walker have moved for summary judgment, pursuant to Fed.

R. Civ. P. 56.  "The role of summary judgment is 'to pierce the pleadings and to assess the proof

in order to see whether there is a genuine need for trial.'"  <u>PC Interiors, Ltd. v. J. Tucci Constr.</u>

<u>Co.</u>, 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816,

822 (1st Cir. 1991)) (additional citations omitted).  The burden is upon the moving party to

show, based upon the discovery and disclosure materials on file, and any affidavits, "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'"  <u>Vineberg v. Bissonnette</u>, 548 F.3d 50, 56 (1st Cir. 2008) (quoting <u>Garside v.</u>

<u>Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is 'material' only if it possesses the

capacity to sway the outcome of the litigation under the applicable law."  <u>Id.</u> (quotations,

punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving

party to set forth specific facts showing that there is a genuine, triable issue."  <u>PC Interiors, Ltd.</u>,

794 F. Supp. 2d at 275.  The opposing party can avoid summary judgment only by providing

properly supported evidence of disputed material facts.  <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d

836, 841-42 (1st Cir. 1993), <u>cert. denied</u>, 511 U.S. 1018, 114 S. Ct. 1398, 128 L. Ed. 2d 72 (1994) .

Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his

pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  <u>Id.</u>

(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d

202 (1986)).

"Cross-motions for summary judgment do not alter the basic Rule 56 standard, but

rather simply require [the court] to determine whether either of the parties deserves judgment

as a matter of law on facts that are not disputed." <u>Adria Int'l Group, Inc. v. Ferre Dev., Inc.</u>, 241

F.3d 103, 107 (1st Cir. 2001).  "'When facing cross-motions for summary judgment, a court must

rule on each motion independently, deciding in each instance whether the moving party has

met its burden under Rule 56.'" <u>Peck v. City of Boston</u>, 750 F. Supp. 2d 308, 312 (D. Mass. 2010)

(quoting <u>Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc.</u>, 761 F. Supp. 194, 197-98 (D.

Mass. 1991)).

**B.**     **Plaintiff's Motion to Strike Evidence of Surveillance Video**

In addition to her motion for summary judgment, McDonald has moved to strike

evidence of the surveillance video of the armed robbery, arguing that the video is inadmissible

hearsay and that the defendants have engaged in spoliation by failing to produce a clearer

version of the video footage.

"Fed. R. Evid. 801(c) defines hearsay generally as 'a statement, other than one made by

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of

the matter asserted.'" <u>Vazquez v. Lopez-Rosario</u>, 134 F.3d 28, 33-34 (1st Cir. 1998).  The

surveillance video has not been offered for the purpose of showing that the armed robbery

occurred.  Rather, the video has been offered to show the evidence Det. Walker relied on in

deciding to apply for an arrest warrant against the plaintiff.  Thus, the video is not offered to

prove the truth of the matter asserted and is not inadmissible hearsay.

McDonald's spoliation argument is also unavailing.  To support an inference of spolia-

tion, "the party urging that spoliation has occurred must show that there is evidence that has

been spoiled (i.e., destroyed or not preserved)."  Gomez v. Stop & Shop Supermarket Co., 670

F.3d 395, 399 (1st Cir. 2012).  McDonald has not demonstrated that evidence was destroyed or

not preserved.  Rather, McDonald is relying on the fact that the video of the armed robbery is

"pixilated and of poor quality," and that Det. Walker testified in his deposition that the video he

initially viewed during his investigation "was not like" the version produced in discovery.  See Pl.

Mot. to Strike (Docket No. 75) at 2; Pl. Ex. 3 at 143-44.  However, counsel for Det. Walker

submitted an affidavit attesting that all video surveillance files relating to the armed robbery in

Det. Walker's possession, custody, and control have been given to the plaintiff.  Brown Aff.

(Docket No. 79) ¶ 3.  Det. Walker also testified at his deposition that the angle and representa-

tion of the video are the same as the one he had viewed during his investigation.  Pl. Ex. 3 at

144-45.  Det. Walker further testified that the video he had viewed originally was not a very

good surveillance picture, and that the clarity "wasn't definite."  Pl. Ex. 3 at 123.  Based on the

record, there is no evidence of spoliation.  However, this evidence compels the inference that

the video clips that the defendant provided to the plaintiff are the video clips that Det. Walker

viewed.  Moreover, in light of the plaintiff's repeated requests for any and all copies of the

video, the defendants are limited in this litigation to the version of the video produced to the

plaintiff.

**C.**     **Count I: Claim Against Walker for Civil Rights Violation Under Section 1983**

In Count I of her complaint, McDonald has asserted a civil rights claim against Det.

Walker, pursuant to Section 1983, for violating her constitutional right to remain free from

unlawful seizure.  Both McDonald and Det. Walker have moved for summary judgment on this claim.

"A claim under section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law [and] second, the conduct must have worked a denial of rights secured by the Constitution or by federal law."  Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997), cert. denied, 522 U.S. 819, 118 S. Ct. 71, 139 L. Ed. 2d 32 (1997).  Det. Walker does not deny that he was acting under color of state law.  Def. Mem. (Docket No. 66) at 5.  Rather, he disputes that his conduct deprived the plaintiff of her constitutional rights.  He further argues that even if his conduct was unlawful, he is entitled to qualified immunity.

## Probable Cause

"The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause."  Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989).  "Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."  Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004).  This assessment depends on "the totality of the circumstances" and "probable cause conclusions may be predicated on information furnished by a credible victim [.]"  White v. Town of Marblehead, 989 F. Supp. 345, 351 (D. Mass. 1997), and cases cited. "If reasonable grounds to arrest exist, probable cause is established and there is no further duty to investigate."  Id. at 349.

The probable cause analysis entails "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not of the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71, 105 S. Ct. 2778, 2783, 86 L. Ed. 2d 370 (1985) (quoting Scott v. United States, 436 U.S. 128, 136, 98 S. Ct. 1717, 1722, 56 L. Ed. 2d 168 (1978)).  "Where 'there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them,' the existence of probable cause for an arrest is an issue for the jury; on the other hand, where the historical facts are established or undisputed, the issue becomes a mixed question of law and fact suitable for determination by the court." Nuon v. City of Lowell, 768 F. Supp. 2d 323, 330 (D. Mass. 2011) (quoting Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir. 1993)).  In the instant case, the undisputed facts compel the conclusion that Det. Walker did not have probable cause to arrest the plaintiff.

As an initial matter, Det. Walker did not act on any information derived from a verified, credible source.  The initial piece of information that led Det. Walker to the plaintiff came from a phone conversation with the purported owner of the car that was used in the armed robbery. The owner of the car had a long criminal history, which included armed robbery, and he refused to meet with Det. Walker.  By contrast, the plaintiff had no criminal history at all.  Yet, Det. Walker's initial identification of the plaintiff as a suspect was based entirely on this information from someone he didn't know, who refused to meet with him, and who, allegedly, was not even present at the crime scene.  Furthermore, Swift's story that he registered the car for a friend for some unknown reason, and for whom he did not provide an address, is not an

inherently credible story in and of itself.  This random identification of someone with a common name did not constitute probable cause.

Moreover, all of the credible facts which Det. Walker did have contradicted any conclusion that the plaintiff was the perpetrator of the armed robbery.  For example, the victims of the crime did not identify the plaintiff from a photo array.  Moreover, even assuming that Swift could be believed, he described someone who did not match the plaintiff's description on her license.  The difference between a 5'3" woman and a 5'8" woman is a very significant difference.

The surveillance tape which Det. Walker allegedly viewed before seeking the arrest warrant did not create probable cause.  Det. Walker himself testified that the video was not a very good surveillance picture, and the clarity "wasn't definite."  Pl. Ex. 3 at 123.  This court has reviewed the video in question, and the picture quality is so poor that it is hard to make out the individuals involved in the robbery, let alone specific physical features.  In sum, considering the circumstances as a whole – the poor quality video, the suspect information from a seemingly unreliable source, and the facts which described someone other than the plaintiff – Det. Walker "has not shown that the facts and circumstances 'were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'"  Daley v. Harber, 234 F. Supp. 2d 27, 31 (D. Mass. 2002) (quoting Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 6 (1st Cir. 1997)) (additional citations omitted).  Based on the totality of the record, Det. Walker did not have probable cause to arrest the plaintiff as a matter of law.[5]

---

[5]  Because this court finds that the defendant did not have probable cause to arrest the plaintiff, it is unnecessary to address the plaintiff's alternative argument that Det. Walker acted with reckless disregard in failing to mention the photo arrays in his arrest warrant application.

**Qualified Immunity**

Det. Walker contends that even if he did not have probable cause to arrest the plaintiff, he is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  "The ultimate question of qualified immunity should ordinarily be decided by the court." St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995), cert. denied, 518 U.S. 1017, 116 S. Ct. 2548, 135 L. Ed. 2d 1068 (1996).  While factual issues may be sent to the jury, where, as here, material facts are not in dispute, "[t]he ultimate question of whether a reasonable police officer, on the basis of information known to him, could have believed his actions were in accord with constitutional rights is a question of law, subject to resolution by the judge, not the jury." Id. at 24 n.1 (internal quotations and citation omitted).

The determination of whether an official is entitled to qualified immunity requires an assessment as to whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right" and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232, 129 S. Ct. at 816 (quotations and citations omitted).  In the instant case, the fact that a police officer needs probable cause to apply for an arrest warrant was a well-established constitutional right at the time of McDonald's arrest, and that step requires no further discussion here. See Malley v. Briggs, 475

U.S. 335, 346 n.9, 106 S. Ct. 1092, 1098 n.9, 89 L. Ed. 2d 271 (1986) (no qualified immunity "if

no officer of reasonable competence would have requested the warrant").

"[T]he second, 'clearly established' step of the qualified immunity analysis . . . in turn,

has two aspects."  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  As the First Circuit

has described:

> One aspect of the analysis focuses on the clarity of the law at the time of the
> alleged civil rights violation.  To overcome qualified immunity, the contours
> of the right must be sufficiently clear that a reasonable official would
> understand that what he is doing violates that right.  The other aspect
> focuses more concretely on the facts of the particular case and whether a
> reasonable defendant would have understood that his conduct violated the
> plaintiffs' constitutional rights.  Indeed, it is important to emphasize that this
> inquiry must be undertaken in light of the specific context of the case, not as
> a broad general proposition.

Id. (quotations, citations and alterations omitted).

The relevant question here is whether Det. Walker's conclusion that he had probable

cause to seek an arrest warrant was "at the time, sufficiently reasonable to afford him the

protection of qualified immunity."  Lewis v. City of Boston, 829 F. Supp. 471, 476 (D. Mass.

1993).  In other words, the question is whether "[a]nother officer, standing in his shoes and

possessing the same information, might reasonably have made the same decision."  Id.  "Even

law enforcement officials who reasonably but mistakenly conclude that probable cause is

present are entitled to immunity."  Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116

L. Ed. 2d 589 (1991) (quotations and citations omitted).

Here, Det. Walker failed to conduct very basic inquiries during his investigation, and

ignored undisputed facts.  Walker received a call from a "Sharon McDonald" who told Walker

"if you explain to me what happened, I can tell you in return what happened."  PF ¶ 15.  Yet he

never attempted to trace her number or to ascertain the phone number(s) associated with the plaintiff.  Walker also failed to show a photo array to Swift prior to seeking an arrest warrant and failed to otherwise verify whether the plaintiff was 5'3" and Jamaican.  He sought the warrant despite the victims' failure to identify the plaintiff from a photo array and despite the fact that her license listed the plaintiff's height as 5'8".  He based his application for a warrant on someone who was not at the crime scene, and was not known to the officer to be credible.  These undisputed facts establish that a reasonable police officer would understand that he lacked probable cause to seek the plaintiff's arrest.  See Nuon, 768 F. Supp. 2d at 334 (officer's claim of qualified immunity denied at summary judgment stage where "no objectively reasonable police officer confronted with [the defendant's] version of the facts could have believed that there was probable cause to arrest [the plaintiff] for disorderly conduct.").

Despite this, Det. Walker argues that he is entitled to qualified immunity on the basis of Parks v. Town of Leicester, Civil Action No. 10-30120-FDS, 2012 WL 2088926 (D. Mass. June 7, 2012).  In Parks, the victim of an assault identified one of his assailants as "Dawn Spencer."  Id. at *1.  The responding officer searched a criminal-history database for "Dawn Spencer," and found an entry associated with the plaintiff.  Id.  On this basis, the officer prepared an application for a criminal complaint, an arrest warrant was issued, and the plaintiff was eventually arrested.  Id. at *1-2.  It turned out that the plaintiff was not the assailant and was no longer using the name "Spencer" at the time of her arrest.  Id. at *1.  After the charges were dismissed, the plaintiff brought a suit against the charging officer and the Town under 42 U.S.C. § 1983.  Id.  Despite finding the officer's decision to obtain an arrest warrant based only on a name to be "troublesome," the court granted him qualified immunity based on the second step

of the analysis that it was not clearly established that reliance on the name alone was improper. Id. at *8, *10.

Det. Walker's reliance on Parks is unavailing.  Unlike the officer in Parks, who was provided the suspect's name by a victim of the crime, i.e., a credible source, here Det. Walker relied on information provided over the phone by someone who claimed to be the registered owner of the getaway car — an individual with an extensive criminal history that included armed robbery.  Moreover, there is nothing in the record to indicate that Det. Walker made any attempt to corroborate this information or otherwise establish Swift's credibility.  Thus, there was no credible information on which to base the arrest warrant.  Further, unlike the officer in Parks, Walker was faced with significant exculpatory evidence, as neither store clerk was able to identify the plaintiff in a photo array, and the plaintiff's driver's license did not match the description provided.  The Parks court itself recognized that an officer who based an arrest warrant solely on the similarity of a common name would, arguably, "be acting in reckless disregard of the truth."  Id. at *8.  Adding to this scenario the fact that the common name was provided by an unreliable source, who was the owner of the get-away car, a reasonable defendant would have recognized that he was violating the plaintiff's constitutional rights.  Under these factual circumstances, no officer could reasonably, but mistakenly, conclude that probable cause was present.  Accordingly, Det. Walker's motion for summary judgment as to Count I is denied and McDonald's motion for summary judgment as to Count I (liability only) is granted.

### D.   Count III: Claim Against the City for Negligence

In Count III of her Complaint, McDonald alleges that the "City of Boston[,] through the actions of its employee Richard Walker, failed to act in a reasonable manner" and that his

negligent investigation resulted "in the arrest and incarceration of the Plaintiff." Compl. (Docket No. 1-1) ¶ 47. For the reasons detailed herein, the plaintiff's motion for summary judgment on this Count is denied.

Under the Massachusetts Tort Claims Act (MTCA), Mass. Gen. Laws ch. 258, § 2, "[p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." In such instances, "liability for the negligent acts of a public employee committed within the scope of employment is visited upon the public employer, and not the employee." Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 246 n.9 (D. Mass. 2010). However, § 2 does not apply to "any claim arising out of an intentional tort, including . . . false arrest, [and] intentional mental distress." Id. § 10(c). The defendants argue that McDonald's claims against Det. Walker are intentional torts, and that the MTCA prevents her from simultaneously recovering against the City for negligence and against Det. Walker for her § 1983 claim.

McDonald argues that her 1983 claim is not an intentional tort because she need not show that Det. Walker had the specific intent to deprive her of a constitutional right. While a Section 1983 claim for false arrest does not require *specific* intent, it still requires intentional conduct. See Tvedten v. City of Boston, Civil Action No. 10-11291-GAO, 2012 WL 1077680, at *3 (D. Mass. Mar. 29, 2012) ("Arrest without probable cause . . . is an intentional act on the part of the arresting officers."); Williams v. City of Boston, No. 10-10131-PBS, 2012 WL 5829124, at *13 (D. Mass. Sep. 21, 2012). See also Melendez v. City of Worcester, 870 F. Supp. 11, 14 (D. Mass. 1994) (examining underlying conduct to determine whether officers committed intentional torts for the purposes of Mass. Gen. Laws ch. 258, § 10(c)). Since the City cannot be

liable for a false arrest by its employee, and the crux of McDonald's negligence claim is that the defendants' negligent investigation led to her false arrest, Count III against the City fails to state a claim. Therefore, the plaintiff's motion for summary judgment on the negligence claim against the City must be denied.[6]

This court acknowledges the case of <u>Lewis v. Kendrick</u>, 944 F.2d 949 (1st Cir. 1991), where, in upholding a jury verdict based on a confusing, and seemingly contradictory, special question, the First Circuit held that "the City could be liable under M.G.L. ch. 258, § 2 for the negligence of defendant officers acting within the scope of their duty" and "[t]o arrest without probable cause, even though in good faith, could be found negligent." <u>Id.</u> at 953 (internal citation omitted). However, no party in that case seems to have argued that Mass. Gen. Laws. ch. 258, § 10(c) expressly provides that a city cannot be liable for a false arrest performed by one of its employees. This court cannot similarly disregard the plain language of § 10(c). As the undisputed facts establish that Det. Walker committed a false arrest in arresting McDonald without probable cause, the City is absolved of liability for Det. Walker's conduct pursuant to Mass. Gen. Laws ch. 258, § 10(c). The plaintiff's motion for summary judgment on this claim is denied.

---

[6] Because the MTCA issue was dispositive on the plaintiff's motion for summary judgment on the negligence claim, this court does not reach the argument that the plaintiff was entitled to summary judgment on the basis of an internal affairs ("IAD") report issued regarding Walker's conduct. The plaintiff contends that the report is conclusive on the issue of negligence while the defendants contend that the report is inadmissible. The court declines to resolve this issue at this time as it is unnecessary to the resolution of the pending motions for summary judgment.

E.      **Count V: Claim Against Walker for Intentional Infliction of Emotional Distress**

In Count V of her complaint, McDonald has alleged a claim of intentional infliction of emotional distress against Det. Walker.  In order to establish a claim for intentional infliction of emotional distress, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community'; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe.'"  Howell v. Enter. Publ'g Co., LLC, 455 Mass. 641, 672, 920 N.E.2d 1, 28 (2010) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E.2d 315, 318-19 (1976)) (additional citations and internal punctuation omitted).  "Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) (internal citations and quotation marks omitted).

"Neither applying for an arrest warrant, nor making an arrest pursuant to an issued warrant can be considered 'utterly intolerable in a civilized community.'"  Sena v. Common-wealth, 417 Mass. 250, 264, 629 N.E.2d 986, 994 (1994) (quoting Agis, 371 Mass. at 145, 355 N.E.2d at 319).  See Eason v. Alexis, 824 F. Supp. 2d 236, 243 (D. Mass. 2011) ("false arrest, without more, cannot give rise to an IIED claim"); Lund v. Henderson, 22 F. Supp. 3d 94, 106 (D. Mass. 2014) (unlawful arrest alone did not constitute extreme and outrageous conduct).  However, McDonald contends that Det. Walker's failure to mention the photo arrays when

applying for the arrest warrant can be considered extreme and outrageous.  McDonald relies on

McGrath v. Town of Sandwich, 169 F. Supp. 3d 251, 259 (D. Mass. 2015), a case involving

allegations that the police had not only arrested the plaintiff without probable cause, but also

"intimidated and deceived [the plaintiff] into signing a written confession."  Indeed, instances

of unlawful arrest can support an IIED claim when the officer has engaged in "extreme and

outrageous conduct" toward the plaintiff prior to, or in the course of the arrest.  See Barbosa v.

Conlon, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (excessive force, abusive language, and

deliberate indifference to obvious medical needs); Eason, 824 F. Supp. 2d at 243-44 (tackling

plaintiff and severely injuring him).

       Here Det. Walker had no interaction with the plaintiff prior to or in the course of her

arrest.  Walker's conduct in applying for an arrest warrant, by itself, cannot be considered

utterly intolerable in a civilized community.  See Sena, 417 Mass. at 264, 629 N.E.2d at 994.  His

omission of the photo arrays in his arrest warrant application, while inappropriate, is not

comparable to the intimidation and deceit alleged in McGrath.  Accordingly, Det. Walker is

entitled to summary judgment on this claim.

> **F.      Count VI: Claim Against Walker for Civil Rights Violation Under
> the Massachusetts Civil Rights Act**

       To prevail on a claim under the MCRA,[7] "a plaintiff must show that (1) his exercise or

enjoyment of rights secured by the constitution or laws of either the United States or the

---

[7] The MCRA, Mass. Gen. Laws ch. 12, § 11H, provides in relevant part: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment

Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Farrah ex rel. Estate of Santana, 725 F. Supp. 2d at 247. "The purpose of the MCRA is to provide under state law a remedy 'coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not.'" Id. (quoting Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23, 473 N.E.2d 1128, 1131 (1985)). Furthermore, unlike Section 1983, the MCRA "is 'explicitly limited' to situations 'where the derogation of secured rights occurs by threats, intimidation or coercion' involving a specific threat of harm 'directed toward a particular individual or class of persons.'" Farrah ex rel. Estate of Santana, 725 F. Supp. 2d at 247 (quoting Bally v. Northeastern Univ., 403 Mass. 713, 718-19, 532 N.E.2d 49, 52 (1989)). As defined by the SJC,

> "[a] '[t]hreat' … involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct.… ['Coercion' involves] the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not otherwise have done."

Id. (quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985, 990 (1994)) (alterations in original).

Ordinarily, "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion." Id. at 248 (quoting Longval v. Comm'r of Corr., 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989)) (additional citation omitted). Indeed, there are no allegations that

---

of the right or rights secured." Mass. Gen. Laws ch. 12, § 11I authorizes civil actions by any person who has suffered the interference or attempted interference of the rights described in § 11H.

Det. Walker interacted with, let alone threatened, intimidated, or coerced, the plaintiff leading

up to, or in the course of her arrest.  However, as explained in this court's memorandum of

decision on Walker's motion to dismiss (Docket No. 35), there is a split in the First Circuit on

whether arrest without probable cause may satisfy the MCRA's requirement of threats,

intimidation or coercion by itself.  In Nuon, 768 F. Supp. 2d at 335 n.8, and cases cited, the

court indicated that arrest without probable cause may constitute "coercion" under the MCRA.

However, "[t]he majority of courts have held that in cases involving wrongful arrests . . . the

fact of a Fourth Amendment violation, standing alone, does not give rise to a claim under the

MCRA."  Ciolino v. Eastman, 128 F. Supp. 3d 366, 380-81 (D. Mass. 2015).  See Goddard v.

Kelley, 629 F. Supp. 2d 115, 128-29 (D. Mass. 2009); Santiago v. Keyes, 890 F. Supp. 2d 149,

155-56 (D. Mass. 2012); Turkowitz v. Town of Provincetown, 914 F. Supp. 2d 62, 76 (D. Mass.

2012); Lund, 22 F. Supp. 3d at 106-07.  Since this court's ruling on Det. Walker's motion to

dismiss, the development of the record has failed to establish the existence of additional facts

indicating that Det. Walker engaged in threats, intimidation, or coercion.  Because the majority

of courts have held that a wrongful arrest, without more, is insufficient for a claim under the

MCRA, and the plaintiff's allegations fall short of establishing threats, intimidation, or coercion

beyond the arrest itself, Det. Walker's motion for summary judgment as to the MCRA claim will

be ALLOWED.

## IV.  CONCLUSION

For all the reasons detailed herein, Det. Walker's Motion for Summary Judgment

(Docket No. 65) is ALLOWED on Count V (IIED) and Count VI (MCRA), and DENIED on Count I

(Section 1983).  McDonald's Motion for Partial Summary Judgment (Docket No. 69) is ALLOWED

on Count I (Section 1983) and DENIED on Count III (Negligence).  Plaintiff's Motion to Strike

Evidence of Surveillance Video (Docket No. 75) is DENIED as provided herein.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge